## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THE ASSOCIATED PRESS,**
**450 West 33rd Street**
**New York, NY 10001**

          **Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF STATE,**
**2201 C Street NW**
**Washington, D.C. 20520**

          **Defendant.**

**Case No. 1:15-cv-345**

## COMPLAINT

Plaintiff The Associated Press, by and through its undersigned attorneys, alleges:

1.       This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§§ 552, *et seq.,* brought by The Associated Press ("AP"), one of the oldest and most trusted

newsgathering organizations in the world, with more than one billion readers, listeners and

viewers.  AP brings this action for injunctive and other appropriate relief, seeking the release of

agency records from the United States Department of State ("State" or the "State Department").

2.       Through this action, AP seeks to compel the State Department to provide records

documenting its actions – and the official actions of former Secretary of State Hillary Rodham

Clinton and other State Department officials – in connection with some of the most prominent

events of the recent past.  The public interest in receiving information about these topics, which

include U.S. efforts to eliminate the threat posed by Osama bin Laden and U.S. government

surveillance activities, is undeniable.  Further, as a former presidential candidate, Secretary of

State, United States Senator and First Lady, Secretary Clinton is a prominent public official, as well as a presumptive candidate for the presidency in 2016.  AP seeks the records in question from the State Department to inform citizens both regarding the operation of their government and regarding Secretary Clinton's official actions as Secretary of State.

3.       Beginning in 2010, AP filed six requests under FOIA seeking records from the State Department regarding Secretary Clinton's official actions.  These requests sought (i) Secretary Clinton's calendars and schedules (two requests); (ii) records concerning the designation of Special Government Employee status given to Secretary Clinton's former Deputy Chief of Staff Huma Abedin; (iii) records concerning the raid in Pakistan in which Osama bin Laden was killed; (iv) records concerning surveillance and other anti-terrorism programs conducted by the U.S. government; and (v) records concerning the State Department's dealings with defense contractor BAE Systems, with whom it reached a settlement in 2011 over violations of the Arms Export Control Act and the International Traffic in Arms Regulations.

4.       In the five years since the first FOIA request was submitted, the State Department has failed to respond substantively to five of the requests, and has only partially responded to one request, releasing three documents called for by one subpart of the August 2013 request for records concerning BAE Systems.

5.       In early March 2015, Secretary Clinton confirmed reports that she used a personal email account, rather than a government account, for government business during her tenure at State.  Although AP's FOIA requests have been pending for years, State first asked Secretary Clinton to turn over emails from that personal account only last summer.  Secretary Clinton reportedly provided about 50,000 pages of printed emails to State late last year, and has said she wants those emails to be released to the public.  State's failure to ensure that Secretary Clinton's

2

governmental emails were retained and preserved by the agency, and its failure timely to seek out and search those emails in response to AP's requests, indicate at the very least that State has not engaged in the diligent, good-faith search that FOIA requires.

6.     At no time over the past five years has the State Department ever indicated that it did not have possession or control over the records, including email messages, sought by AP. Whether email concerning official government business is sent to or from an official State Department email account or from a "personal" account maintained by State Department officials but used for government business, the State Department as a matter of law both possesses and controls such emails and has an obligation to release them under FOIA.  The State Department should be compelled to abide by the law, perform reasonable searches and promptly release all of the requested records, including all responsive emails.

## PARTIES

7.     Plaintiff The Associated Press is a not-for-profit cooperative whose members are U.S. newspapers and broadcasters.  Its world headquarters are at 450 West 33rd Street, New York, NY 10001.

8.     Defendant State Department is an agency of the federal government that has possession, custody and/or control of the records that AP seeks.  State is headquartered at 2201 C Street Northwest, Washington, DC 20520.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the State Department pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

10.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

3

11.     AP is deemed to have exhausted all its administrative remedies pursuant to

5 U.S.C. § 552(a)(6)(C) because State has failed to respond within the statutorily mandated time

limit of twenty working days after receipt of a request.  5 U.S.C. § 552(a)(6)(A)(i).

## FACTS

12.     FOIA "focuses on the citizens' right to be informed about 'what their government

is up to,'" by fostering the release of "[o]fficial information that sheds light on an agency's

performance of its statutory duties."  *DOJ v. Reporters Comm. For Freedom of the Press*, 489

U.S. 749, 773 (1989) (citation omitted).   "[D]isclosure, not secrecy, is the dominant objective"

of FOIA.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)

(internal quotation marks and citations omitted).

13.     One of President Obama's first acts after taking office was to state his

administration's policy regarding FOIA, instructing agency managers that "[t]he Freedom of

Information Act should be administered with a clear presumption: In the face of doubt, openness

prevails. . . . Nondisclosure should never be based on an effort to protect the personal interests of

Government officials at the expense of those they are supposed to serve."  Presidential

Memorandum, Freedom of Information Act, 74 Fed. Reg. 4,683 (Jan. 21, 2009).

14.     AP, like other news organizations, serves as a conduit for seeking out and

providing information to citizens about "what their government is up to."  Indeed, the First

Amendment's guarantee of freedom of the press is meant to enable journalists to play an

"essential role in our democracy," to "bare the secrets of government and inform the people."

*N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

15.     Through the FOIA requests at issue in this case, AP seeks to fulfill this essential

civic role and shine a public light on the actions of the State Department and Hillary Clinton, its

former Secretary and a presumptive 2016 presidential candidate, in connection with some of the more important recent events of our time.

### Request A:  Secretary Clinton's Calendars and Schedules

16.      On March 9, 2010, AP journalist Robert Burns submitted a request to the State Department via its website FOIA portal seeking "a copy of Secretary of State Hillary Rodham Clinton's daily calendar of appointments, phone calls, and meetings, from the first day of the Obama Administration to the present," *i.e.*, "from 1/20/2009 to [March 9, 2010]."  Ex. A at AP 002.  Separately, on August 20, 2013, AP journalist Stephen Braun submitted a FOIA request to the State Department seeking "copies of all of former Secretary of State Hillary Rodham Clinton's public and private calendars and schedules from Jan. 21, 2009 through February 1, 2013."  *Id.* at AP 007.  True and correct copies of these overlapping requests (referred to herein together as "Request A"), together with the State Department's acknowledgements thereof, are attached hereto as Exhibit A.

17.      The records AP seeks through Request A are necessary for the public to understand the activities of the State Department during the relevant time period and to put into context the past and present foreign policy of the United States.  Further, these documents are needed to shed light on the actions of one of the most important Cabinet secretaries in the Executive Branch, who is a past and possibly future candidate for this nation's highest elected office.  Mr. Braun explained in his request:  "These records pertain to the daily official activities of a former secretary of state who has run in the past for the presidency of the United States and is considering another presidential campaign. . . . Prompt release of these records would contribute significantly to . . . the public's understanding of Secretary Clinton's role as a senior

government official, especially as voters examine her record in detail as the 2016 presidential election approaches."  Ex. A at AP 007.

18.     State acknowledged receipt of Mr. Burns' March 9, 2010 request by email on March 16, 2010, *id.* at AP 002-03, and by letter dated April 22, 2010, *id.* at AP 005-006.  State assigned to this request Case Control No. F-2010-1376.

19.     State acknowledged receipt of Mr. Braun's August 20, 2013 request by letter dated August 26, 2013.  Ex. A at AP 009-010.  State assigned to this request Case Control No. F-2013-14315.  State denied Mr. Braun's request for expedited processing by letter dated September 19, 2013.

20.     To date, State has failed to respond to Mr. Burns' and Mr. Braun's requests comprising Request A.  Therefore, it has constructively denied Request A and AP has, by operation of law, exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(c).

### Request B:  Records Regarding Huma Abedin

21.     On August 20, 2013, AP journalist Stephen Braun submitted another FOIA request to the State Department ("Request B").  True and correct copies of Request B, and State's acknowledgement thereof, are attached hereto as Exhibit B.

22.     Request B seeks "copies of all emails, in-house memos, correspondence, internal notes and any other pertinent documents and records from the office of Secretary of State Hillary Rodham Clinton between November 1, 2011 and February 1, 2013, relating to the designation of Special Government Employee given to former Deputy Chief of Staff to the Secretary of State Huma Abedin and to her work performed for the State Department as an Special Government Employee."  Ex. B at AP 012.

23.     The request further seeks copies of the same types of records for the same time frame "from the files of the following current and former State Department personnel: Former Chief of Staff and Counselor to the Secretary Cheryl Mills; former Senior Adviser Philippe Reines; Deputy Secretary of State William Burns; Undersecretary of State for Management Patrick Kennedy; former Deputy Chief of Staff Jake Sullivan; and Ambassador-At-Large for Global Women's Issues Melanne S. Verveer." *Id.*

24.     In addition, the request seeks "copies of all emails from Secretary Clinton and the above-named parties during the same period described above in which the following underlined words or phrases are in the subject and/or body of the email message: <u>Huma Abedin, Huma, Anthony Weiner, Teneo, Douglas Band, Doug Band, Declan Kelly, Paul Keary, Clinton Foundation</u>[.]" *Id.*

25.     AP seeks these records to shed light on the official actions of Secretary Clinton and Ms. Abedin, a longtime aide to Secretary Clinton and high-ranking government official in her own right.  The records sought by Request B are necessary for the public's understanding of the intertwined relationships among Secretary Clinton, Ms. Abedin and Teneo, a consulting firm founded by Douglas Band, a longtime aide and advisor to former President Bill Clinton.  Ms. Abedin reportedly worked for Teneo at the same time she worked as a Special Government Employee for the State Department.  Mr. Braun explained in his request:  "These records pertain to a key aide to Secretary Clinton whose SGE role at State has come under question in recent weeks and is the subject of Congressional inquiry.  The records pertaining to the hiring of a long-time aide of a former secretary of state who has run in the past for the presidency of the United States and is considering another presidential campaign is a matter of current exigency to the American public." *Id.*

7

26.     State acknowledged receipt of Request B by letter dated August 23, 2013. Ex. B

at AP 014.  State assigned to Request B Case Control No. F-2013-14267.  *Id.*

27.     To date, State has failed to respond to Request B. Therefore, it has constructively

denied Request B and AP has, by operation of law, exhausted its administrative remedies.

5 U.S.C. § 552(a)(6)(c).

### Request C:  Email Regarding the Raid on Osama bin Laden's Compound

28.     On August 20, 2013, AP journalist Jack Gillum submitted a FOIA request to the

State Department ("Request C").  True and correct copies of Request C, and the State

Department's acknowledgement thereof, are attached as Exhibit C.

29.     Request C seeks "access to and copies of former Secretary of State Hillary

Clinton's email messages in which the underlined phrases are in the subject and/or body of the

message: Bin Laden, Abbottabad, Seal Team. This request covers emails only sent or received

from Jan. 20, 2009 through Feb. 1, 2013."  Ex. C at AP 016.

30.     The value to the public of the information sought by Request C is self-evident.

Few recent U.S. government actions have been more consequential than the U.S. military raid on

Osama bin Laden's compound in Abbottabad, Pakistan.  Release of these records would

contribute significantly to public understanding of this event and Secretary Clinton's and the

State Department's role in it.  Additionally, in the event that Secretary Clinton does become a

presidential candidate again, voters will have a particular need to understand the details of her

involvement in bin Laden's downfall.

31.     State acknowledged receipt of Request C by letter dated August 26, 2013.  Ex. C

at AP 018.  State assigned to Request C Case Control No. F-2013-14260.  *Id.*

32.     To date, State has failed to respond to Request C. Therefore, it has constructively

denied Request C and AP has, by operation of law, exhausted its administrative remedies.

5 U.S.C. § 552(a)(6)(c).

**Request D:  Records Regarding Surveillance and Anti-Terrorism Programs**

33.     On August 2, 2013, AP journalist Jack Gillum submitted another FOIA request

("Request D") to the State Department.  True and correct copies of Request D, and State's

acknowledgement of receipt thereof, are attached hereto as Exhibit D.

34.     Request D seeks "access to and copies of: all emails to or from former Secretary

of State Hillary Clinton and the following current or former State Department employees: Huma

Abedin, Cheryl D. Mills, Philippe Reines, Melanne S. Verveer and Harold Hongju Koh.  This

request only covers emails in which the following underlined words or phrases are in the subject

and/or body of the email message: drone, metadata, prism, pinwheel, stellarwind, blarney, FISA.

As well, this request only covers emails sent or received from Jan. 20, 2009, through Feb. 2,

2013."  Ex. D at AP 020.

35.     The records sought by Request D will contribute significantly to the public's

understanding of some of the most controversial and consequential U.S. government actions: the

surveillance and targeting of suspected terrorists.  "Prism," "Pinwheel," "Stellar Wind," and

"Blarney" are code names for various controversial surveillance programs.  These programs have

been the subject not only of intense public debate but also of extensive litigation.  *See, e.g.*, *Jewel*

*v. Nat'l Sec. Agency*, 673 F.3d 902, 905 (9th Cir. 2011) (reversing dismissal of class-action

lawsuit regarding warrantless wiretapping of communications within the United States);

*Klayman v. Obama*, 957 F. Supp. 2d 1, 1-9 (D.D.C. 2013) (granting preliminary injunction

against government's bulk collection of telephone "metadata" but staying order pending appeal).

36.     State acknowledged receipt of Request D by letter dated August 26, 2013.  Ex. D

at AP 022.  State assigned to Request D Case Control No. F-2013-14257.  *Id.*

37.     To date, State has failed to respond to Request D.  Therefore, it has constructively

denied Request D and AP has, by operation of law, exhausted its administrative remedies.

5 U.S.C. § 552(a)(6)(c).

### Request E:  Records Regarding BAE Systems

38.     On August 8, 2013, AP journalist Stephen Braun submitted a FOIA request to the

State Department ("Request E").  True and correct copies of Request E, together with the State

Department's acknowledgement thereof and partial response thereto, are attached hereto as

Exhibit E.

39.     Request E, which amended and superseded a similar request submitted on July 29,

2013, asks the State Department to release "copies of all emails, diplomatic cables, written

correspondence, internal reports, legal documents, inter-office memos, meeting notes, analyses

and all other documents and records from the office of Secretary of State Hillary Rodham

Clinton pertaining to UK-based BAE Systems plc. and/or the company's U.S.-based subsidiary,

BAE Systems Inc. between Jan. 21, 2009, and Dec. 31, 2011."  Ex. E at AP 024.

40.     Request E further seeks copies of the same materials regarding BAE from State's

Office of Political-Military Affairs, Office of Legal Adviser, Bureau of Legislative Affairs and

Directorate of Defense Trade Controls; and from the following current or former State officials:

Deputy Secretary of State and former Under Secretary for Political Affairs William J. Burns;

former Deputy Secretary of State James B. Steinberg; former Assistant Secretary of State for

Political-Military Affairs Andrew J. Shapiro; Undersecretary for Arms Control and International

Security Ellen Tauscher; former Director of Policy Planning and Deputy Chief of Staff Jake

Sullivan; former Legal Adviser Harold H. Koh; Assistant Secretary for the Bureau of Legislative Affairs Richard Verma; and Robert S. Kovac, Lisa Studtmann and Jay Shinn of the Directorate of Defense Trade Controls.  *Id.*

41.     AP seeks these agency records to inform the public regarding State's decision to enter into a consent agreement with a large and prominent foreign-based military contractor that State had accused of committing thousands of violations of U.S. law and failing to cooperate fully with an investigation into that alleged wrongdoing.

42.     As Mr. Braun explained in Request E, AP intends to use the records to illuminate "the State Department's decision-making that led to a civil settlement and consent decree with BAE Systems – an agreement that allowed BAE to avoid a debarment proceeding that would have prohibited the company from doing business with State and other U.S. government agencies.  Learning the State Department's internal thinking and actions are critical both to understanding why BAE continues to contract with the U.S. and to understanding the role that former Secretary of State Clinton and her top officials played in the process – which could be important to Mrs. Clinton's possible presidential aspirations."  Ex. E at AP 024-025.

43.     Under the consent agreement referenced in Request E, BAE agreed to pay a $79 million penalty ($10 million of which was suspended pending satisfactory completion of other terms) in settlement of 2,591 alleged violations of the Arms Export Control Act, 22 U.S.C. §§ 2778-2780, and the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130.  True and correct copies of the relevant Proposed Charging Letter, Consent Agreement and Order are attached hereto as Exhibit F.[1]

44.     State and BAE reached the agreement after BAE pleaded guilty in 2010 to one count of conspiracy to violate the AECA and other federal statutes.  Ex. F. at AP 030-031.

---

[1] Copies also are available at https://www.pmddtc.state.gov/compliance/consent_agreements/baes.html.

45.     A State Department investigation determined (despite BAE's failure to cooperate fully) that BAE was involved in brokering deals, without obtaining the required approval from the U.S. government, for military ships and aircraft that incorporated U.S. systems such as missiles and radar equipment.  *Id.* at AP 032-038.

46.     By letter dated October 31, 2013, State provided a partial response to Request E. Ex. E at AP 026.  State assigned to Request E Case Control No. F-2013-12881.  *Id.*

47.     The partial response stated that the State Department had completed searches of its "Central Foreign Policy Records" (which it asserted was "the principal record system of the Department of State") and records of the Bureau of Legislative Affairs.  *Id.*  State represented that those searches located three responsive documents, which were released to AP in full.  *Id.*

48.     State also represented that it had "initiated" searches of record systems of the Office of the Executive Secretariat, the Bureau of Political-Military Affairs, and the Office of Legal Adviser.  *Id.*

49.     The partial response did not explain why State had not initiated searches of records of the Directorate of Defense Trade Controls, which had been specifically identified in Request E.

50.      To date, State has not otherwise responded to Request E.  Therefore, it has constructively denied Request E in part and AP has, by operation of law, exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(c)

**State's Illusory "Estimated Completion Dates"**

51.     The AP journalists who filed Requests A-E have contacted the State Department repeatedly to inquire about the status of their requests.  State's response has been to offer

inconsistent assurances that processing was occurring and to give "estimated completion dates" which invariably have come and gone without any agency records being produced.

52.     On May 9, 2014, for example, Mr. Braun engaged in an email exchange with Eva O. Tyler of the State Department regarding Requests A, B and E.  A true and correct copy of that email exchange is attached as Exhibit G.

        a.  Regarding Request A, Case F-2013-14315, Ms. Tyler stated that "I pushed it to the assigned office today."  Ex. G at AP 073.  She did not explain what this meant, nor why the request had only been "pushed" to the responsible office some seven months after it was made.

        b.  Regarding Request B, Case F-2013-14267, Ms. Tyler wrote that "[t]he request for records from the Department's Central Foreign Policy files resulted in the retrieval of a number of records which are currently under relevancy review."  Ex. G at AP 075.  She stated that "[t]he request for records is still pending with the Senior Executive Service; and the assigned Compliance and Research is continuing to follow up with that office."  *Id.* She represented that the "estimated completion date" for Request B was September 2014.  *Id.*  No records have been produced to date, some six months after State's own self-established deadline (and nearly 18 months after the statutory deadline).

        c.  Regarding Request E, Case F-2013-12881, Ms. Tyler stated that her office "recently received records from the Bureau of Political-Military Affairs [and] are going through the concurrence process."  *Id.*  Ms. Tyler represented that her office "has followed up with the Office of the

Executive Secretariat and the Office of the Legal Adviser, but those

request [sic] for records are still pending." *Id.* She represented that "at

this time the estimated completion date is August 2014." *Id.* No records

have been produced to date, some seven months after State's own self-

established deadline (again, nearly 18 months past the deadline imposed

by statute).

53.     On September 18, 2014, State sent Mr. Burns an email concerning his portion of

Request A, stating that, "your case has been initiated and is pending a response." A true and

correct copy of this email is attached as Exhibit H. This form email states that the FOIA process

at State is "complex and lengthy" but does not offer any specific reason for the delay in

processing this request, which now has been pending for *five years*. Ex. H at AP 077.

54.     On December 4, 2014, Mr. Braun sent an email to State inquiring about the status

of Requests A-E. State replied via email from Charlotte W. Duckett on December 5, 2014. A

true and correct copy of that email exchange is attached as Exhibit I.

a.     Regarding Request A, for Mr. Burns' request, Case F-2010-1376, Ms.

Duckett stated: "Our office has contacted the office that is processing this

request. Information regarding the status will be provided to you when we

receive a response." Ex. I at AP 079. For Mr. Braun's request, Case F-

2013-14315, Ms. Duckett stated that "December 2014 was the estimated

completion date for your request." *Id.* She did not state which systems of

records were purportedly being searched or provide a reason for any

limitation on the search. In any event, no records have been produced to

date, more than two months after State's own self-established deadline (and five years after Mr. Burns's initial request).

b. Regarding Request B, Case F-2013-14267, Ms. Duckett represented that State had initiated a search of State's "Central Foreign Policy files" and records of the Senior Executive Service.  *Id.*  She represented that documents retrieved from the former were "under review" and the search of the latter was continuing.  *Id.*  Ms. Duckett stated that the "estimated completion date" for Request B was April 2015. *Id.*  She did not mention the previous "estimated completion date" of September 2014 or explain why this self-imposed deadline was missed.  In any event, no records have been produced to date.

c. Regarding Request C, Case F-2013-14260, Ms. Duckett stated that a search of Senior Executive Service files was continuing.  *Id.*  She stated that the "estimated completion date" for Request C was October 2015.  *Id.* She did not state whether any other records systems were being searched or, if not, why the search was restricted to Senior Executive Service files.

d. Regarding Request D, Case F-2013-14257, Ms. Duckett stated that a search of Senior Executive Service files was complete and was "being prepared for review."  *Id.*  She stated that the "estimated completion date" for Request D was April 2015.  *Id.*  She did not state whether any other records systems were searched or, if not, why the search was restricted to Senior Executive Service files.

e.   Regarding Request E, Case F-2013-12881, Ms. Duckett stated that a

"[s]earch was initiated with the Bureau of Political Military Affairs," and

that the search "has been completed and in [sic] the review process." *Id.*

Ms. Duckett represented that "[t]he estimated completion date for this

request was December 2014." *Id.*  She did not mention the Office of the

Executive Secretariat or the Office of Legal Adviser referred to by Ms.

Tyler or explain whether the search had been restricted to the Bureau of

Political-Military Affairs.  In any event, no records have been produced to

date, more than two months after State's own self-established deadline

(and some 18 months past the initial due date).

### AP's Administrative Appeal

55.     On January 12, 2015, AP submitted to the Chairman of the State Department's

Appeals Review Panel an administrative appeal of the State Department's constructive denial of

all six of the AP's FOIA requests.  A true and correct copy of that administrative appeal is

attached hereto as Exhibit J.

56.     The State Department responded by letter dated January 16, 2015, stating that the

requests "are not subject to administrative appeal at this time, since no specific material has been

denied in response to the requests."  Ex. K at AP 087.  A true and correct copy of this letter is

attached hereto as Exhibit K.

57.     The State Department letter also stated that "a requester shall be deemed to have

exhausted his administrative remedies if an agency fails to respond within the applicable time

limit specified in the [FOIA], which is twenty days." *Id.*

58.     AP is deemed to have exhausted its administrative remedies.

## FIRST CAUSE OF ACTION
### (Violation of FOIA for failure to conduct a reasonable search)

59.     AP repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

60.     State is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore had an obligation to conduct a search reasonably calculated to uncover all records responsive to the requests.

61.     State's inconsistent explanations of which records it has purportedly searched, its failure to release any records responsive to Requests A-D, and its claim to have located only three documents responsive to Request E show that the State Department has manifestly failed to satisfy its obligations to diligently search for responsive records under FOIA, 5 U.S.C. § 552(a)(3).

## SECOND CAUSE OF ACTION
### (Violation of FOIA for failure to make records available)

62.     AP repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

63.     State is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore must disclose in response to a FOIA request all responsive records in its possession at the time of the Request that are not specifically exempt from disclosure under FOIA, and must provide a lawful reason for withholding any records as to which it is claiming an exemption.

64.     State's failure timely to disclose the records requested by AP in Requests A-E violates FOIA, 5 U.S.C. § 552(a)(3)(A).

## REQUEST FOR RELIEF

**WHEREFORE**, AP respectfully requests that this Court:

a.      Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.      Declare that the records sought by Requests A-E, as more particularly

described above, are public records pursuant to 5 U.S.C. § 552, that the

State Department failed to conduct a reasonable and diligent search for the

records as required by 5 U.S.C. § 552(a)(3), and that the records must be

disclosed;

c.      Order the State Department to provide those records to AP, including

electronic copies of records stored in electronic format, within 20 business

days of the Court's order;

d.      Award AP the costs of this proceeding, including reasonable attorney's

fees, as authorized by FOIA; and

e.      Grant AP such other and further relief as this Court deems just and proper.

Dated:  March 11, 2015                    Respectfully submitted,

                                          LEVINE SULLIVAN KOCH & SCHULZ, LLP

                                          By:     /s/ Jay Ward Brown
                                                  Jay Ward Brown (D.C. Bar No. 437686)
                                                  1899 L Street, N.W., Suite 200
                                                  Washington, D.C.  20036
                                                  Telephone: (202) 508-1136
Of Counsel:                                       Fax: (202) 861-9888
                                                  E-mail: jbrown@lskslaw.com
Karen Kaiser
Brian Barrett                                     David A. Schulz (D.C. Bar No. 459197)
The Associated Press                              321 West 44th Street, Suite 1000
450 West 33rd Street                              New York, NY 10036
New York, NY  10001                               Telephone: (212) 850-6100
Telephone: (212) 621-7547                         Fax: (212) 850-6299
Fax: (212) 506-6131                               E-mail: dschulz@lskslaw.com
E-mail: kkaiser@ap.org
E-mail: bbarrett@ap.org                   *Counsel for Plaintiff The Associated Press*