## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ASSOCIATED PRESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-345 |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department"). In this capacity, I oversee the office of the Department responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the Department in this capacity since June 2015. Prior to assuming this role, I served as the Acting Director of IPS since March 2014, and previous to that, I served as the Deputy Director of IPS since April 2013. I make the following statements based upon my personal knowledge, which in turn is based upon a personal review of the requests at issue in the litigation and upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and processing efforts with respect to those requests.

1

2.      The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) systematic review under the Executive Order; (3) records management; (4) privacy protection; (5) national security classification management and declassification review; (6) corporate records archives management; (7) research; (8) operation and management of the Department's library; and (9) technology applications that support these activities.

3.      The purpose of this declaration is to answer the specific questions posed by the Court during the July 15, 2015 status conference in this case and provide information on the issues in which the Court expressed interest. Those questions and issues relate to (i) the Department's FOIA caseload and resources devoted thereto, (ii) why the Department has not yet processed the FOIA requests submitted by the Associated Press ("Plaintiff"), and (iii) estimates of the number of pages of records responsive to Plaintiff's FOIA requests and where those records are most likely to be located. A summary of Plaintiff's FOIA requests is first provided to give context to the discussion of these issues below.

## SUMMARY OF PLAINTIFF'S FOIA REQUESTS

4.      This case involves five separate FOIA requests submitted by Plaintiff to the Department, designated A through E in the complaint. Request A was submitted in March 2010 and revised in August 2013, and requests B through E were submitted in August 2013. All five requests seek records of former Secretary of State Clinton or her office, for some period of time while she was Secretary of State. Some specifically request only her emails

2

related to a particular subject or subjects, whereas others request her emails and other types of

records related to a particular subject or subjects, and one request seeks all of former Secretary

Clinton's calendars and schedules for her tenure in office. Other requests seek the emails or

records of other State Department officials, or former officials, as well.

5.        Request A: Request A seeks copies of all of former Secretary Clinton's public

and private calendars and schedules during her tenure in office (from January 21, 2009 to

February 1, 2013). Complt. ¶ 16, Exhibit A. Plaintiff originally submitted this request on

March 9, 2010 and subsequently submitted a revised version of this request on August 20,

2013. Id.

6.        Request B: Request B contains three separate requests, as follows, and was

submitted to the Department by letter dated August 20, 2013. Id. ¶ 21, Exhibit B.

      6.1.        Request B seeks copies of all emails, "in-house memos, correspondence,

internal notes and any other pertinent documents and records from the office of

Secretary of State Hillary Rodham Clinton between November 1, 2011 and February 1,

2013 relating to the designation of Special Government Employee given to former

Deputy Chief of Staff to the Secretary of State Huma Abedin and to her work

performed for the State Department as a Special Government Employee." Id. ¶ 22,

Exhibit B.

      6.2.        This request also seeks "the same materials . . . between November 1,

2011 and February, 2013 regarding Ms. Abedin's SGE designation and work from the

files of the following current and former State Department personnel: Former Chief of

Staff and Counselor to the Secretary Cheryl Mills; former Senior Adviser Philippe

Reines; Deputy Secretary of State William Burns; Undersecretary of State for

Management Patrick Kennedy; former Deputy Chief of Staff Jake Sullivan; and Ambassador-At-Large for Global Women's Issues Melanne S. Verveer." Id. ¶ 23, Exhibit B.

      6.3.    Finally, this request also seeks "copies of all emails from Secretary Clinton and the above-named parties during the same period described above in which the following underlined words or phrases are in the subject and/or body of the email message: Huma Abedin, Huma, Anthony Weiner, Teneo, Douglas Band, Doug Band, Declan Kelly, Paul Keary, Clinton Foundation." Id. ¶ 24, Exhibit B.

      7.    Request C: Request C seeks copies of former Secretary Clinton's email messages in which the phrases "Bin Laden," "Abbottabad," or "Seal Team" are in the subject or body of the message. The time frame for this request is January 20, 2009 through February 1, 2013. Id. ¶ 29, Exhibit C. Plaintiff submitted this request by letter dated August 20, 2013. Id. ¶¶ 28-29, Exhibit C.

      8.    Request D: Request D seeks copies of all emails to or from former Secretary Clinton and five named current or former State Department employees (Huma Abedin, Cheryl Mills, Philippe Reines, Melanne Verveer, and Harold Hongju Koh), in which the following words or phrases appear in the subject or body of the email message: "drone," "metadata," "prism," "pinwheel," "stellarwind," "blarney," or "FISA." This request covers emails sent or received from January 20, 2009 through February 2, 2013. Id. ¶¶ 33-34, Exhibit D. Plaintiff submitted this request by letter dated August 2, 2013. Id. ¶ 33, Exhibit D.

      9.    Request E: Request E contains three separate requests, as follows, and was submitted to the Department by letter dated August 8, 2013. Id. ¶ 38, Exhibit E.

4

9.1.     Request E seeks copies of "all emails, diplomatic cables, written correspondence, internal reports, legal documents, inter-office memos, meeting notes, analyses and all other documents and records from the office of Secretary of State Hillary Rodham Clinton pertaining to UK-based BAE Systems plc. and/or the company's U.S.-based subsidiary, BAE Systems Inc. between Jan.21, 2009 and Dec. 31, 2011." Id. ¶ 39, Exhibit E.

9.2.     This request also seeks "all copies of the same materials referenced above from the Department of State's Office of Political-Military Affairs, the Office of the Legal Adviser, the Bureau of Legislative Affairs and the Directorate of Defense Trade Controls between Jan. 21, 2009 and Dec. 31, 2011." Id. ¶ 40, Exhibit E.

9.3.     Finally, this request also seeks "(a)ll copies of the same material referenced above from the following current or former Department of State Officials between Jan. 21, 2009 and Dec. 31, 2011: Deputy Secretary of State and former Under Secretary for Political Affairs William J. Burns; former Deputy Secretary of State James B. Steinberg; former Asst. Secretary of State for Political-Military Affairs Andrew J. Shapiro; Undersecretary for Arms Control and International Security Ellen Tauscher; former Director of Policy Planning and Deputy Chief of Staff Jake Sullivan; former Legal Adviser Harold H. Koh; Assistant Secretary for the Bureau of Legislative Affairs Richard Verma; and Robert S. Kovac, Lisa Studtmann and Jay Shinn of the Directorate of Defense Trade Controls." Id. ¶ 40, Exhibit E.

## THE DEPARTMENT'S FOIA CASELOAD, RESOURCES, AND PROCESS

10.     Over the past several years, the Department's FOIA caseload has greatly

increased. In FY 2008, the Department received fewer than 6,000 new FOIA requests; that number of new FOIA requests annually increased, reaching nearly 20,000 in FY 2014 (an increase of over 300%). By the end of Fiscal Year 2014, the Department had 10,965 FOIA requests pending. Since October 2014, the Department has received approximately 16,517 new requests and is currently engaged in 86 FOIA litigation cases, many of which involve court-ordered document production schedules. At a time when the FOIA caseload is increasing dramatically, funding for the Department's operating account, which funds Department operations around the world, including the FOIA program, has decreased in real terms because appropriated funding for Diplomatic and Consular Programs Ongoing Operations has been reduced by 15.9 percent since sequestration in FY 2013, with annual Federal pay raises and overseas inflation increasing State's annual operating costs by at least 3% annually. Within that level, the monies available to process FOIA requests outside of litigation have remained nearly constant since Fiscal Year 2013. For instance, the Department spent approximately $16.5 million in FY 2013 and $15.9 million in FY 2014 on FOIA personnel costs associated with processing requests.

11.     The FOIA requests received by the Department are often a mixture of complex subject matters regarding terrorism, armed conflicts, foreign government relations, security, and diplomacy. As described more fully below, these complex subject matters require multiple searches throughout many of the Department's 275 Missions across the globe, often involving the review of classified or highly sensitive materials, as well as coordination with other federal agencies. In many of these cases, searches locate voluminous amounts of paper and electronic materials that must be reviewed by the Department and subject matter experts at various agencies in the U.S. Government. Given that FOIA requests to the Department often relate to

6

contemporary topics, the FOIA team must consult within the Department and with other interagency subject matter experts regarding sensitivities and whether the release of the information would potentially harm U.S. national security or damage relations with a foreign country.

12.     In terms of the Department's FOIA process, once a FOIA request is received, a Department employee opens a case, assigns a case tracking number, and analyzes the request to determine if the request reasonably describes the records sought and is filed in accordance with the Department's FOIA regulations (in other words, if the request is valid). If the request is invalid, the employee advises the requester that the Department has received the request and informs the requester of what additional information is required to make the request valid. The Department may need to engage in several rounds of correspondence with the requester the Department obtains all information necessary to move forward with the request. The employee forwards the case file to the appropriate processing branch, and the analyst (and, in many cases, a subject matter expert) assesses the request to identify which bureaus and/or offices of the Department are reasonably likely to maintain responsive records.

13.     The analyst then sends "search taskers" to contacts in those parts of the Department that the analyst has identified, and those contacts either conduct document searches or locate appropriate personnel to conduct those searches. The Department does not employ personnel only for the purpose of searching for records, but rather requires employees to incorporate FOIA searches among their other responsibilities, as employees who conduct searches of all of the records systems at their disposal are reasonably more likely to locate responsive records. Searches are often performed by electronically searching emails in Microsoft Outlook, files saved on individual or shared drives or other files saved in databases,

7

often using key words or dates.  Because the Department historically retained many documents in hard copy files, employees must sometimes perform manual searches through file cabinets, boxes, or other filing systems, and, often, paper files must be ordered from archival locations. Upon the conclusion of the search, each employee and/or office tasked with conducting a search must provide IPS with both the potentially responsive documents and a form explaining which file systems the employee searched, how those file systems are organized, and what steps the employee took to locate the potentially responsive documents.  The employee must then return that form along with electronic or paper copies of the potentially responsive documents to IPS.

14.     At this point, IPS takes possession of the potentially responsive documents. Because IPS's document review platform, known as Freedoms 2 (or "F2") cannot  ingest most forms of electronic data, most potentially responsive documents must be printed (if they were provided to IPS in an electronic format) and then scanned into F2.  Once documents are scanned into F2, F2 assigns each of the documents an identification number (or "CADRE Number") used to identify specific documents, and an IPS employee manually inputs certain data associated with each document, such as the date of the document (if available).  IPS then assigns those documents for review to an IPS employee, or reviewer, with appropriate clearance and subject matter expertise to handle that set of documents.

15.     The reviewer performs a line-by-line review of the document to determine whether the document is responsive to the request, whether any information in the document is sensitive to the extent that it is or potentially should become classified or otherwise should be redacted or withheld under one of the exemptions provided by the FOIA, and whether the document contains equities belonging to other federal agencies.  During this process, the

8

reviewer may consult with other Department employees (including, for example, employees in regional bureaus or attorneys) as s/he sees fit, often more than once in the process. If the reviewer determines that a document essentially belongs to the Department but contains another federal agency's equities, then the reviewer will send that document to the relevant federal agency for consultation. If the reviewer determines that a document belongs to another federal agency, s/he will mark the document with her/his requested redactions, if any, on behalf of the Department and send the document to that federal agency for direct reply to the requester.

16.     For any documents that the Department will release in part or in full, the reviewer marks the document with the required stamps indicating the release determinations. The Department provides those documents to the requester with a cover letter indicating where the documents were located within the Department, which (if any) exemptions were applied to documents withheld in full or in part (including a list of the available FOIA exemptions), and whether the requester should expect to receive additional release determinations from the Department in the future, or whether the Department's response to the request is complete. The reviewer will also provide an explanatory letter in the event that no responsive documents were located or all responsive documents were withheld in full.

17.     After the Department has advised the requester of its release determinations, the requester may appeal the Department's decision in an administrative appeal process. FOIA administrative appeals are reviewed by IPS reviewers who analyze the issues raised on appeal and submit a recommendation to the Department's Appeals Review Panel for consideration in adjudicating the appeal. The Appeals Review Panel, comprised of retired Ambassadors who are uniquely qualified to determine the potential harm in releasing national security and U.S.

9

foreign policy information, meet several times a year to consider FOIA appeals.

18.      The Department's FOIA staff consists of 63.5 full-time civil service employees who address these numerous FOIA requests and appeals, as well as FOIA litigation. This number includes employees who work in IPS and the Department's decentralized bureaus/offices, such as Consular Affairs and Diplomatic Security, that process FOIA and Privacy Act requests for access to records maintained in those bureaus/offices. See 22 C.F.R. § 171.11(a). The Department also engages the services of approximately 40 part-time retired Foreign Service Officers, some of whom have served as Ambassadors, to serve as subject matter experts in reviewing potentially responsive documents for Department equities, to make inter-agency consultations, and to apply appropriate FOIA exemptions to protect exempt information. The ability to increase the FOIA staff is constrained by budgetary issues, but also by the need for FOIA staff to possess the necessary security clearances and subject matter expertise to review materials related to U.S.-foreign relations and diplomacy that may be responsive to FOIA requests. IPS cannot determine, based on a request alone, whether any of the responsive material will be classified. Moreover, pursuant to its authority under Executive Order 13526, IPS may determine to raise the classification level assigned to information responsive to a FOIA request (for example, IPS may determine that certain information marked as "unclassified" must be classified at the "secret" or "top secret" level). Finally, F2 operates on a classified platform, which requires any reviewers using the system to hold a security clearance of at least the SECRET level. Consequently, IPS reviewers must have clearances because they cannot know from the outset whether they will be handling classified information and because they need the clearances to operate in F2, the document review platform. Furthermore, IPS does not assign reviewers to work on FOIA requests exclusively in litigation

10

because doing so would divert them from working on the much larger number of existing FOIA requests not in litigation.

19.     The FOIA provides for multi-track processing of requests based on the amount of work or time (or both) involved in processing requests. *See* 5 U.S.C. § 552(a)(6)(D). The Department has established three processing tracks: simple, complex, and expedited. Requests placed in the simple request track are anticipated to require relatively minimal search time to locate responsive records, which will result in a small amount of material to review. The complex request track contains requests that require multiple searches that are anticipated to locate more voluminous responsive records for review. Requests granted expedited processing are placed in a separate queue. A large majority of the Department's requests falls into the complex processing track, as those requests require searches in numerous offices domestically and abroad, involve the review of sensitive records, and require multiple inter-agency consultations. To ensure that requesters are treated fairly, requests in each track are processed on a first-in/first-out basis. A request may be granted expedited processing, in which it is placed in an expedited processing queue operating on a first-in/first-out basis, if the requester can make a specific showing of a compelling need that meets one of the following four criteria: (i) imminent threat to the life or physical safety of an individual; (ii) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government Activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (iii) substantial humanitarian reasons; or (iv) loss of substantial due process rights. 22 C.F.R. §171.12(b). Separate and apart from expedited processing, a request may be prioritized once it has entered into litigation and a court order is entered setting forth a schedule for document

11

production. As indicated above, however, reassigning individuals to work on FOIA requests in litigation detracts from those available to handle incoming requests and thereby may lengthen the time needed to respond to requests that are not in litigation.

## ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUESTS

20.     As of the beginning of Fiscal Year 2011, a few months after Plaintiff submitted its first FOIA request, Request A (in March 2010), the Department had 21,252 FOIA requests pending. By the beginning of Fiscal Year 2014, approximately two months after Plaintiff submitted a revised version of Request A in addition to Requests B-E (in August 2013), the number of FOIA requests pending fell to 9,363. Plaintiff's requests, including its revised version of Request A, were placed in the queue that existed when those requests were submitted. As noted above, many of the requests ahead of Plaintiff's were complex and time-consuming to fill.

21.     As of the end of Fiscal Year 2014, approximately five months before the filing of this lawsuit, on March 11, 2015, IPS still had 10,965 FOIA pending requests, including Plaintiff's, in the queue, and for that reason, the Department had not yet completed processing Plaintiff's request. Plaintiffs requests were categorized as complex. None of Plaintiff's requests were granted expedited processing, nor were they prioritized as a result of being in litigation, since they were not in litigation until March 2015. Once in litigation, the Department and Plaintiff began negotiating a schedule for searches and production of non-exempt responsive records.

22.     Since Plaintiff's requests were submitted, the Department has identified the offices that are reasonably likely to contain records responsive to Plaintiff's requests and has

12

engaged in ongoing searches for those records. It is from those ongoing searches that the Department draws the estimates that the Court requested at the July 15 status conference regarding potential responsive records. The Department is posting the non-exempt portions of a collection of former Secretary Clinton's emails from her tenure as Secretary of State, which it received from her in December 2014, to its website in an electronic, searchable format. The estimates set forth below, and the ongoing search, incorporate Plaintiff's expressed willingness, as I understand it, to accept the posting of those emails, to be completed by January 29, 2016, as a response to its requests for Secretary Clinton's emails regarding the subjects set forth in requests A through E. [1]

23.     With respect to request A, IPS has been working diligently with the Offices of the Secretary and Diplomatic Security to locate former Secretary Clinton's calendars and schedules. IPS began working with the Office of the Secretary in 2010. In 2013, Plaintiff revised its request. IPS reviewed material provided by the Office of the Secretary in 2014 and requested that the Office of the Secretary conduct additional searches. IPS has continued to engage with the Office of the Secretary concerning the searches, as described more fully below. In July 2015, in an abundance of caution, IPS also asked Diplomatic Security ("DS") to conduct searches for potentially responsive material, and DS has since responded that it has no potentially responsive records.

24.     In addition to the potentially responsive records that the Department has

---

[1] Former Secretary Clinton's emails are responsive in whole or in part to hundreds of other FOIA requests currently pending, approximately 30 of which are in litigation. Many of these requests predated Plaintiff's request. The processing of the Clinton emails in their entirety presents a rare opportunity to respond to multiple FOIA requests at the same time, including Plaintiff's, and thereby conserve limited resources.

13

identified or continues to search for in response to Request A, Plaintiff may also access a complete copy of former Secretary Clinton's public schedule on the Department's website, at http://www.state.gov/r/pa/prs/appt/. Moreover, the Department expects to release many of former Secretary Clinton's emails that include information about her daily schedule in the monthly productions of her emails, described more fully above. For instance, the production released on June 30, 2014 (which, along with a previous release, amounted to approximately 7.5% of the Department's collection of former Secretary Clinton's emails) included approximately 200 emails containing her daily schedules.

25.     With respect to request B, concerning the SGE status of Huma Abedin, IPS has been working with the Offices of the Secretary, the Undersecretary for Management, the Undersecretary for Political Affairs, the Bureau of Public Affairs, and the Office of Global Women's Issues (where Ms. Abedin worked), which have been asked to conduct searches, as described more fully below. In addition, in April 2014, IPS searched the State Archiving System ("SAS") and located 90 potentially responsive records. IPS has recently re-run that search in SAS, as described more fully below. IPS began working with the Office of the Secretary in May 2014, and began working with the Undersecretary for Management, the Bureau of Public Affairs, and the Office of Global Women's Issues in June 2015.

26.     With respect to request C for former Secretary Clinton's emails related to the bin Laden raid, IPS has not tasked this search as the location of such documents would be former Secretary Clinton's emails, which Plaintiff has expressed a willingness to search itself once they are made publicly available.

27.     With respect to request D related to alleged surveillance programs, IPS has

14

been working with the Office of the Secretary, the Bureau of Public Affairs, the Office of
Global Women's Issues, the Office of the Legal Adviser, and the Office of Information
Resource Management. In September 2014, IPS asked the Office of the Secretary to search for
potentially responsive material and has continued to engage with that office. IPS also
independently searched SAS, and in May 2015, IPS asked the Office of Global Women's
Issues, the Bureau of Public Affairs, the Office of the Legal Adviser, and the Bureau of
Information Resource Management ("IRM") to conduct searches, as discussed more fully
below. The Bureau of Public Affairs and IRM have both indicated that they have no
potentially responsive records.

28.     With respect to request E related to BAE Systems, the IPS has been working
with the Office of the Secretary, the Bureau of Political-Military Affairs, the Office of the
Legal Adviser, the Undersecretary for Arms Control and International Security, and the Bureau
of Legislative Affairs, as well as searching in SAS for relevant correspondence or memoranda
(these offices encompass the individuals named in the third part of Request E). In August
2013, IPS searched SAS and asked the Office of the Secretary, the Bureau of Political-Military
Affairs, the Office of the Legal Adviser, and the Bureau of Legislative Affairs to conduct
searches. IPS received a small number of documents from the Bureau of Legislative Affairs,
SAS, and the Bureau of Political-Military Affairs. IPS has continued to engage with the
various offices. In June 2015, IPS again asked the Office of the Legal Adviser, the Bureau of
Political-Military Affairs, the Office of the Secretary, and the Bureau of Legislative Affairs to
conduct searches. The Bureau of Legislative Affairs provided the same documents that it
provided in response to IPS's prior search request. IPS also re-conducted a search of SAS and
asked the Under Secretary for Arms Control and International Security to conduct a search.

15

These subsequent searches are described more fully below.

29.     We estimate the total volume of potentially responsive documents to be as

follows, with the caveat that these estimates do not include potentially responsive documents

located within the collection of emails provided to the Department by former Secretary

Clinton, as Plaintiff has expressed a willingness to search those emails independently as the

Department posts them to its FOIA website, www.foia.state.gov:

### 29.1.   Request A (daily calendar of appointments, phone calls, and

### meetings), approximately 4,440 pages:

- Approximately 1,500 pages located through a search of the Retired Records
Inventory Management System (the system in which manifests listing the
Department's retired files are stored). The pages were located in boxes that IPS
ordered from the Department's archival system. IPS determined that the pages
formed a stack approximately 6 inches tall and assumed that 1 inch of paper equaled
250 pages. IPS estimated the number of potentially responsive pages by multiplying
6 inches by 250 pages.

- At least 2,940 pages from the Office of the Secretary. This estimate concerns emails
from various personnel who served in the Office of the Secretary during former
Secretary Clinton's tenure and is based on the assumptions (i) that former Secretary
Clinton may have received an email reflecting a version of her daily schedule every
day of the year from the beginning of her tenure on January 21, 2009 through the
end of her tenure on February 1, 2013 and (ii) that each email averaged 2 pages in
length. IPS has reason to believe that such emails exist because some are contained
in the Department's production of former Secretary Clinton's email, which Plaintiff
may currently access on the Department's website, www.foia.state.gov.

### 29.2.   Request B (Special Government Employee Designation for Huma

### Abedin), approximately 68 pages:

- Approximately 23 pages from SAS. These documents are located in an electronic
database and were retrieved using the search terms "Huma" or "Abedin" and either
"SGE" or "special gov* employee" (where the search function allows for various
formations of the word "gov," including but not limited to "government" or "govt").

16

- Approximately 33 pages from the Office of the Secretary. These documents were retrieved by the Office of the Secretary and provided to IPS. The Office of the Secretary advised IPS that it searched the Secretariat Tracking and Retrieval System ("STARS"), the Cable Archive Retrieval System ("CARS"), the Secretariat Telegram Electronic Processing System ("STePs"), and email databases using terms including but not limited to "Huma Abedin," "Huma," "Anthony Weiner," "Teneo," "Douglas Band," "Doug Band," "Declan Kelly," "Paul Keary," and "Clinton Foundation."

- Approximately 2 pages from the Under Secretary for Management. This document was retrieved by the Undersecretary for Management and provided to IPS. The Undersecretary for Management advised IPS that it searched email using multiple search terms, including but not limited to "Weiner" as well as various terms used in Request B.

- Approximately 10 pages from the Bureau of Public Affairs. These documents were retrieved by the Bureau of Public Affairs and provided to IPS. The Bureau of Public Affairs advised IPS that it searched emails, personal drives, and shared drives using terms including but not limited to "Huma Abedin," "Huma," "Teneo," "SGE," and "Clinton Foundation."

### 29.3.  Request C (Clinton email word searches):

The Department has not conducted a search of former Secretary Clinton's emails

because Plaintiff has expressed a willingness to search those itself.

### 29.4.  Request D (alleged surveillance programs), at least 7 pages:

Given the breadth of the topics and the stage of the search, the Department cannot

provide an estimate of potentially responsive records with any degree of accuracy.

Although IPS has received at least 7 pages from the Office of the Secretary, searches are

ongoing within the Office of the Legal Adviser and the Office of Global Women's Issues.

- Approximately 7 pages from the Office of the Secretary. These documents were retrieved by the Office of the Secretary and provided to IPS. The Office of the Secretary advised IPS that it searched STARS, CARS, and STePs databases using terms including "Huma Abedin," "Abedin," "Cheryl D. Mills," "Mills," "drone," "metadata," "prism," "pinwheel," "stellarwind," "blarney," and "FISA."

17

- Unknown quantity from the Office of the Legal Adviser. IPS tasked the Office of the Legal Adviser because Harold Hongju Koh, who is named in the request, served as the Legal Adviser to former Secretary Clinton. The Office of the Legal Adviser has advised IPS that its search for and collection of documents that are potentially responsive to this request are ongoing.

- Unknown quantity from the Office of Global Women's Issues. IPS tasked the Office of Global Women's Issues because Melanne Verveer, who is named in the request, served in that office during former Secretary Clinton's tenure. The Office of Global Women's Issues has advised IPS that its search for and collection of documents that are potentially responsive to this request are ongoing.

### 29.5.   Request E (BAE Systems), at least 17,897 pages:

- Approximately 2,589 pages from SAS. These documents are located in an electronic database and were retrieved using the search terms ("settl*" or "agree*" or "ITAR" "violat*" or "negotiate*" or "defense" or "trade") and "BAE Systems." This number was derived by multiplying the number of documents responsive to this search (602 documents) by the average number of pages in the first 10 documents responsive to this search (4.3 pages), to arrive at 2,588.6 pages.

- Approximately 60 pages from the Office of the Secretary and the Under Secretary for Arms Control and International Security. These documents were retrieved by the Office of the Secretary and provided to IPS. The Office of the Secretary advised IPS that it searched STARS, STePs, Top Secret files, and email databases (including the emails of Ellen Tauscher) using terms including but not limited to "BAE," "ITAR," and "U.S. Defense Trade Violations."

- At least 5,000 pages from the Office of the Legal Adviser. The Office of the Legal Adviser has advised IPS that its search has yielded over 5,000 pages, and the Office of the Legal Adviser is in the process of transferring those pages to IPS.

- Approximately 10,248 pages from the Bureau of Political-Military Affairs. These documents were retrieved by the Bureau of Political-Military Affairs and provided to IPS on several compact discs ("cds") containing a total of approximately 2,600 documents. IPS determined that the documents consisted of 2,364 emails and 513 attachments and, based on a sample, determined that the average length of the emails was approximately 1.5 pages and that the average length of the attachments was approximately 12.1 pages. By multiplying the number of files by their anticipated average lengths, IPS has estimated that the cds contain a total of approximately 10,248 pages. IPS also determined that the cds contained a total of approximately 1,091 pages of classified material.

30.   Based on the data set forth above, the Department anticipates reviewing a

minimum of 22,412 pages in response to Plaintiff's requests. This number may increase, as IPS

may receive additional documents from the Office of the Legal Adviser and the Office of Global Women's Issues. In addition, although IPS has already engaged with all parts of the Department that it reasonably anticipates possesses responsive records, as IPS reviewers read the material collected, they may discover additional locations that should be searched.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___21st___ day of July 2015, Washington D.C.

John F. Hackett

19