**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
ASSOCIATED PRESS,                         )
                                          )
          Plaintiff,                      )
                                          )
             v.                           )          No. 1:15-cv-345
                                          )
U.S. DEPARTMENT OF STATE,                 )
                                          )
          Defendant.                      )
_____)

## SECOND SUPPLEMENTAL DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.       As described in my earlier declaration of July 21, 2015, I oversee the office of the

United States Department of State ("the Department") Office of Information Programs and

Services ("IPS") responsible for, among other things, responding to requests for records under

the Freedom of Information Act (the "FOIA").  *See* Declaration of John Hackett ¶ 29 (ECF No.

11-1).  The purpose of this declaration is to provide the additional information requested by the

Court during the July 29, 2015 hearing.

### IPS's "Work With" Other Offices

2.       The Court asked me to provide an explanation of what I meant when, in

paragraph 25 of my July 21, 2015 Declaration, I said IPS was "working with" certain offices to

conduct the search in response to Request B.  July 21, 2015 Transcript ("Tr.") at 35/4-7.  By this

phrase I was referring to the ongoing and involved role that IPS Case Analysts play in the entire

process of document collection.  Specifically, when IPS receives a FOIA request, it assigns the

request to an IPS Case Analyst, who may handle 500 to 1,000 non-litigation FOIA requests at

1

any given time.  The Case Analyst reviews the request to discern the subject matter and date range of the request.   The Case Analyst then relies on her or his knowledge of the Department to determine which offices or Bureaus are reasonably likely to have responsive documents, and the Case Analyst may also consult with her or his colleagues in IPS —including Reviewers, who are the Department's subject matter experts—for their opinions as well.  The Case Analyst then identifies the points of contact ("POCs") in each of those offices or Bureaus or posts and sends those POCs a copy of the FOIA request and a "search tasker," which is a form that instructs the POCs to conduct a search and requires them to provide certain information (known as "search details") concerning what steps that POC took to conduct the search and the number of potentially responsive documents or materials located.

3.     The IPS Case Analyst's role in this process is not limited to sending or receiving search taskers.  Often, a POC or her or his designee will have questions concerning the scope or date range of the request, the steps necessary to conduct an adequate search, the available exemptions under FOIA, or the Department's obligations under the FOIA statute.  Case Analysts may answer these questions in the first instance or may facilitate resolution of the POC's questions by identifying another person at the Department, for instance a supervisor or an attorney, who may be more qualified to address the particular issue raised by the POC.  In other instances, POCs or their designees may conduct searches, provide material, and return their search tasker forms without asking questions of the Case Analyst.  When the Case Analysts receive those completed search tasker forms, they may have additional questions for the POCs or request additional searching by the POC.  Finally, a POC or the Case Analyst may recommend that searches in other locations throughout the Department be conducted, which may require the Case Analyst to send additional search taskers.  With respect to Request B, based on my

2

examination of the casefile, IPS initially tasked the Office of the Executive Secretariat in

November 2013, and, as I described in my declaration dated July 21, 2015, subsequently tasked

the Office of the Executive Secretariat, the Undersecretary for Management, the Bureau of

Public Affairs, and the Office of Global Women's Issues.  IPS's work with these offices

generally conformed to the practices described above.

### POCs For Request E

4.      The Court asked me to identify the POCs in the Bureau of Legislative Affairs, the

Office of the Legal Adviser, the Bureau of Political-Military Affairs, and the Office of the

Executive Secretariat who were tasked with responding to Request E.[1]  Tr. at 23/12-16.  The

casefile reflects that an IPS Case Analyst sent search taskers to FOIA POCs in the Bureau of

Legislative Affairs, the Office of the Legal Adviser, the Office of the Executive Secretariat

(which is responsible for searching the Office of the Secretary, among other offices), and the

Bureau of Political-Military Affairs on or about August 19, 2013, as more fully set forth below.

In 2013 and 2014, none of these offices employed personnel whose main responsibility was to

search for documents responsive to FOIA requests; rather their employees worked on FOIA

requests on top of their other significant duties, despite the fact that responding to a FOIA

request can be extremely time-consuming.

5.      For instance, the FOIA POC in the Office of the Legal Adviser has informed my

office that he had at least 35 open FOIA requests as of July 31, 2014 (a point in time at which the

office took stock of the total number of open FOIA requests it had on hand) and has received an

---

[1] SAS, the State Archiving System, which I reported as having 2,589 pages of responsive
records, July 21, 2015 Declaration of John F. Hackett ¶ 29.5, was not part of the Court's request.

additional 35 search taskers since then for new FOIA requests.[2]  The FOIA POC for the Office of

the Executive Secretariat informed my office he received 97 FOIA taskers in 2013 and 114

FOIA taskers in 2014 and that he has already received 92 FOIA taskers as of August 3, 2015,

putting him on track to receive an estimated 200 FOIA taskers this year.[3]  When offices respond

to these FOIA requests, they not only conduct searches or locate appropriate personnel to

conduct them, but they also allocate time toward printing the hundreds—maybe thousands—of

potentially responsive pages for ingestion into IPS's document review platform Freedoms 2

("F2").

      6.     Notwithstanding those demands, the POCs for each of the search taskers sent by

IPS in response to Request E worked with the IPS Case Analyst from 2013 – 2015 to respond, as

follows:

      6.1    <u>Bureau of Legislative Affairs:</u> On August 19, 2013, IPS tasked this FOIA

request to the Bureau of Legislative Affairs ("H"), where it was received by

Cynthia Andrews.  Ms. Andrews completed and returned the tasker on August 20,

2013, providing four potentially responsive documents to IPS.  IPS timely reviewed

those documents, determined that two were non-responsive, and produced the other

two to Plaintiff on or about October 21, 2013.  After the commencement of

---

[2] In June and July of this year, the Office of the Legal Adviser hired three new employees to increase its capacity to handle FOIA requests.  Two of the employees will take on many of the FOIA POC's non-FOIA responsibilities, allowing him additional time to focus on FOIA requests, and one of the employees would provide him with support handling FOIA requests as one of her primary functions.

[3] In February of this year, the Office of the Executive Secretariat hired an employee who, as part of his responsibilities, will help to conduct searches in response to FOIA requests outside of litigation.

*Assoc. Press v. U.S. Dep't of State*
*1:15-cv-000345-RJL*
*Second Supplemental Hackett Declaration*

litigation, the IPS Case Analyst handling the case re-tasked H on June 11, 2015 to

verify that H had provided all potentially responsive materials.  Ms. Andrews

reassessed the request and confirmed on June 29, 2015, that H had no additional

documents to provide beyond what H had provided to IPS in 2013.

6.2     Office of the Legal Adviser:  On August 19, 2013, IPS tasked FOIA

Request E to the Office of the Legal Adviser ("L").  Although the Department was

unable to locate an email reflecting the employee who received the tasker on behalf

of L, subsequent email traffic dated January 8, 2014, indicates that IPS notified

Jerry Drake of L that IPS was assigning a new Case Analyst to handle this FOIA

request on behalf of IPS.  Although Mr. Drake has been unable to locate email

correspondence reflecting his delegation of this FOIA request to another individual

in his office, he has located an email that he sent on December 8, 2014, stating that

"the person we had working on that has departed before clearing this FOIA" and

indicating that he would "get it cleared right away."  Mr. Drake then forwarded the

search tasker to the office in L that was reasonably likely to have responsive

documents and corresponded regularly with an attorney in that office in December

and January to identify the documents and transfer them into Mr. Drake's

possession.  The attorney located hundreds of documents totaling approximately

5,000 pages of material.  By June 2015, Mr. Drake and the attorney developed a

way to transfer the large volume of documents electronically.  At that point, Mr.

Drake and the attorney reviewed whether the documents were in fact responsive to

the request.  To avoid unnecessarily printing out thousands of pages of non-

responsive material, the attorney extracted approximately 490 pages of emails and

5

attachments that he believed were likely to be responsive to the request.  Mr. Drake

then printed those emails and attachments and provided them to IPS for their

ingestion into F2.

6.3     Office of the Executive Secretariat (referred to in my July 21, 2015

declaration at ¶29.5 as the Office of the Secretary and the Under Secretary for Arms

Control and International Security): On August 19, 2013, IPS tasked the Office of

the Secretary ("S/ES").  Although the Department was unable to locate an email

reflecting the employee who received the tasker on behalf of S/ES, subsequent

email traffic dated January 8, 2014, indicates that IPS notified Clarence Finney and

Jonathon Wasser of S/ES that IPS was assigning a new Case Analyst to handle this

FOIA request on behalf of IPS.  Mr. Wasser has informed my office that he recalls

sending paper copies of potentially responsive documents to an IPS employee

during the month of February 2015, although IPS has no record of receiving these

documents.  My office, does, however, have an email dated February 13, 2015,

reflecting an attempt to send the documents electronically, but the particular email

contains no attachments.  After the commencement of litigation, the IPS Case

Analyst handling the case re-tasked S/ES on June 5, 2015.  Mr. Wasser re-

conducted the search and located 14 responsive documents.  He notified IPS of

those documents by memorandum dated July 17, 2015.

6.4     Bureau of Political Military Affairs: On August 19, 2013, IPS tasked the

Bureau of Political-Military Affairs ("PM").  As the request related to a civil

settlement involving the Directorate of Defense Trade Controls ("DDTC"), it was

tasked to DDTC and Lisa Aguirre, Director of Management, handled it.  On

September 19, 2013, the IPS Case Analyst then handling the case emailed Ms.

Aguirre to advise that the Plaintiff had agreed to narrow the request to records

"concerning the May 2011 State decision for a negotiated civil settlement with

BAE…."  Given the narrowed focus of the request, Ms. Aguirre recommended a

search of the DDTC's Trade Registration, Enforcement and Compliance System

("TRECS"), which holds scanned documents for DDTC's compliance cases,

including directed disclosures, voluntary disclosures, settlements, and law

enforcement support matters.

DDTC searched the Consolidated Management Data System ("CMDS"),

which includes TRECS, Defense Trade system ("DTRADE"), Defense Trade

legacy system ("DETRA"), Watchlist, and Blue Lantern database, using the terms

"BAE plc" and "BAE Inc." and produced four pages of indices from the TRECS

system listing potentially responsive documents.  (Ms. Aguirre was under the

impression at the time that another State office was responsible for searching emails

of former and current employees and let IPS know this in her response.)  Believing

that the documents listed in the indices would be exempt from production under the

statutory FOIA exemptions, Ms. Aguirre produced the four pages of indices

reflecting the identification of approximately 86 potentially responsive documents

to IPS on or about September 27, 2013.  In late March 2014, an IPS reviewer

reached out to Ms. Aguirre to request that she provide the documents listed in the

indices, explaining why a reviewer from IPS would need to make the exemption

determinations rather than relying on Ms. Aguirre's office to do so.  Ms. Aguirre

agreed to provide the underlying documents to the reviewer, but both my office and Ms. Aguirre have been unable to locate a record of the transfer of those documents to IPS.

After the commencement of litigation, the IPS Case Analyst handling the case re-tasked PM on June 5, 2015.  When DDTC conducted this search, it elected to search a wider variety of records including emails, since in the interim period from the initial search Ms. Aguirre learned DDTC is responsible for searching emails of current employees.  DDTC also searched the CMDS system for TRECS data and also searched paper files.  This broader search yielded approximately 2,600 documents.  The change in approach DDTC took when running its second search accounts for the difference in the number of documents between the first search conducted in 2013 and the second search conducted in 2015.

**<u>Denial of Expedited Processing for Requests B and C</u>**

7.    The Court has asked me to explain why expedited processing was denied as to Requests B and C.  Tr. at 33/25-34/1; 37/11-12.  A request may be granted expedited processing, in which it is placed in an expedited processing queue operating on a first-in/first-out basis, if the requester can make a specific showing of a compelling need that meets one of the following four criteria: (i) imminent threat to the life or physical safety of an individual; (ii) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government Activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly;

8

(iii) substantial humanitarian reasons; or (iv) loss of substantial due process rights.  22 C.F.R.

§171.12(b).

8.    Plaintiff requested expedited processing for Requests B and C on August 20,

2013, on identical grounds, i.e., that it had "an 'urgency to inform' the public about an activity of

the federal government…."   In addition, with respect to Request C, plaintiff asserted that the

"[p]ublic interest in the prompt disclosure of the records is high, as it would shed light on the

operations of government, particularly whether or not Secretary Clinton engaged in misconduct

or unethical behavior during her tenure as the nation's top diplomat."  *See* Exhibit 1.  The

Department found that these bases failed to satisfy the criteria set forth in 22 C.F.R. §171.12(b).

It therefore denied Plaintiff's requests for expedited processing.   The Department notified

Plaintiff of the denial and of its reasons by letters dated August 23, 2013 (for Request B), and

August 26, 2013 (for Request C).

9.    Plaintiff then submitted a letter dated September 3, 2013, stating that the letter

"serves as an appeal to . . . denial of expedited processing" with respect to Request B.  The letter

explained that Plaintiff had a "compelling need" for the information because "release of these

records would contribute significantly to . . . the public's understanding of Secretary Clinton's

role as a senior government official, especially as voters examine her record in detail as the 2016

presidential election approaches."  *See* Exhibit 2.  Plaintiff also submitted an email dated

September 25, 2013, stating that the email "serves as an appeal to . . . denial of expedited

processing" with respect to Request C.  That email explained that Plaintiff had a "compelling

need" for the information sought in Request C because—as with Request B— "release of these

records would contribute significantly to . . . the public's understanding of Secretary Clinton's

role as a senior government official, especially as voters examine her record in detail as the 2016 presidential election approaches."  *See* Exhibit 2.

10.     After considering Plaintiff's September letters, the Department denied Plaintiff's requests for expedited processing concerning Requests B and C by letters dated November 13, 2013, and March 20, 2014, respectively, because Plaintiff's requests  did "not meet any of the established criteria" set forth in 22 C.F.R. §171.12(b).  *See* Exhibit 3.  The Department concluded that expedited processing—which would have been to the detriment of thousands of other requesters who were also awaiting responses to their FOIA requests—was not warranted as Plaintiff had not shown that the information sought was "urgently needed in that a particular value of the information would be lost if not disseminated quickly."  Plaintiff's primary reason for seeking expedited processing in 2013 involved the potential future candidacy of Secretary Clinton for the presidential election three years hence, a matter which plaintiff itself acknowledged was speculative when it stated that former Secretary Clinton was "considering another presidential campaign."  *See* Exhibit 2.  Because the Department receives thousands of requests every year concerning its role in U.S. diplomacy, such a speculative need must be weighed against matters that are truly time sensitive.  For instance, in 2014, the Department expedited requests concerning the Ebola crisis in 2014, as that information could have played a role in life-and-death decisions.  While the requests of plaintiff as a media organization might have concerned matters of general public interest, they did not involve similar urgency or otherwise meet the criteria set forth in 22 C.F.R. §171.12(b).

**Author of March 25, 2015 Letter Regarding Request D**

11.     The Court has asked me to identify who sent the March 25, 2015 letter to plaintiff stating, "We've now completed the processing of your case."  Tr. 41/18-19.  On or about September 11, 2014, IPS tasked the Office of the S/ES to search for documents potentially responsive to F-2013-14257 (Request D).  S/ES conducted a search and provided potentially responsive materials to IPS on or about September 30, 2014.  IPS reviewers reviewed that material, and Felicia Ruffin authorized the release of the responsive, non-exempt materials to Plaintiff and signed a cover letter dated March 25, 2015, which is the letter to which the Court referred.  At the time she sent the letter, Ms. Ruffin had not yet been notified that the request was in litigation and therefore remained open.  Ms. Ruffin's letter was sent in error and in good faith and does not reflect now or at the time it was sent the status of F-2013-14257.  Furthermore, it did not delay or otherwise affect the continued processing of Request D.

**The Processing of "Request A"**

12.     The Court has asked me to explain whether the Department treated the portion of Request A that was submitted in 2013 as replacing the 2010 portion of Request A, and whether both requests are still being processed.  Tr. at 30/10-21.  As explained at the July 21, 2015 status hearing, Tr. at 52/10-18, although the plaintiff combines these into one "Request A" in the Complaint and they are coextensive with one another, the Department has not treated the 2013 portion as replacing the 2010 portion, and both portions are still being processed.  The Department has consistently handled the searches for requests F-2010-01376 and F-2013-14315 separately.  For instance, after the Department received request F-2010-01376, it sent a search tasker to the Office of the Executive Secretariat and attached a copy of request F-2010-01376.  Similarly, upon receipt of request F-2013-14315, the Department sent a search tasker to the

11

Office of the Executive Secretariat, attaching a copy of that request.  The Department then continued to work with the Office of the Secretary to complete both search taskers and corresponded with representatives of Plaintiff about each request.  Plaintiff is aware that the Department has separated the two requests in its correspondence with Plaintiff, as reflected in an email from IPS to Stephen S. Braun, dated December 5, 2014, in which IPS separately described the status of requests F-2010-01376 and F-2013-14315.  This email is reproduced in Exhibit I to the Complaint.

### **Court Ordered Production Schedules**

13.     The Court has asked me to describe how many of the FOIA cases against the Department that are currently pending in the federal courts have already existing scheduling orders setting a timetable by which the materials have to be produced.  Tr. at 26/21-25.  The Department currently has almost 90 FOIA litigation cases and more than half of them currently require the Department to engage in document review and production according to a schedule whether set by explicit court order or by the parties setting forth an agreed to schedule in court filings, such as status reports.  I have attached a chart reflecting many of the cases in which IPS has either a court ordered or agreed upon production schedule as Exhibit 4 to this declaration.

*[The remainder of this page was intentionally left blank.]*

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed this ____5th____ day of August 2015, Washington, D.C.

John F. Hackett

13

# EXHIBIT 1



F-2013-14267

August 20, 2013

Department of State
Sheryl L. Walter
Director, Office of Information Programs and Services
Building SA-2
515 22nd Street, NW
Washington, DC 20522-8100
Ofc: 202-261-8484
Fax: 202-261-8579

Re: Freedom of Information Act request

Dear Ms. Walter,

Please consider this a request under provisions of the Freedom of Information Act and the Electronic Freedom of Information Act, 5 U.S.C § 552.

I am requesting copies of all emails, in-house memos, correspondence, internal notes and any other pertinent documents and records from the office of Secretary of State Hillary Rodham Clinton between November 1, 2011 and February 1, 2013 relating to the designation of Special Government Employee given to former Deputy Chief of Staff to the Secretary of State Huma Abedin and to her work performed for the State Department as an Special Government Employee.

Additionally, I am also requesting copies of the same materials referenced above between November 1, 2011 and February, 2013 regarding Ms. Abedin's SGE designation and work from the files of the following current and former State Department personnel: Former Chief of Staff and Counselor to the Secretary Cheryl Mills; former Senior Adviser Philippe Reines; Deputy Secretary of State William Burns; Undersecretary of State for Management Patrick Kennedy; former Deputy Chief of Staff Jake Sullivan; and Ambassador-At-Large for Global Women's Issues Melanne S. Verveer.

Also, I am asking for copies of all emails from Secretary Clinton and the above-named parties during the same period described above in which the following underlined words or phrases are in the subject and/or body of the email message: <u>Huma Abedin, Huma, Anthony Weiner, Teneo, Douglas Band, Doug Band, Declan Kelly, Paul Keary, Clinton Foundation</u>

Because I am a member of the news media who is primarily engaged in disseminating information, I have an "urgency to inform" the public about an activity of the federal government in accordance with § 552 (a)(6)(E)(v). Such a request for expedited processing meets established criteria for demonstrating a "compelling need": the records concern a matter of current exigency to the American public; that their delay would compromise a significant recognized interest; and that they concern federal government activity. See generally *Al-Fayed v. C.I.A.*, 254 F.3d.300, 310 (D.C. Cir. 2001).

These records pertain to a key aide to Secretary Clinton whose SGE role at State has come under question in recent weeks and is the subject of Congressional inquiry. The records pertaining to the hiring of a long-time aide of a former secretary of state who has run in the past for the presidency of the United States and is considering another presidential campaign[1] is a matter of current exigency to the American public and

---

[1] Steve Peoples, CLINTON GROUP RAISED $1 MILLION FOR POTENTIAL PRESIDENTIAL BID, The Associated Press, July 30, 2013.

**1100 13ᵗʰ St. NW, Suite 700, Washington, DC 20005-4076**
**T: 202.641.9000 voice; www.ap.org**

their delay would compromise a significant recognized interest. The records are a matter of extreme public importance such that disclosure of would not apply to any exemption sufficient to warrant withholding or unnecessary delay under the FOIA. Indeed, the only relevant public interest at stake is the extent to which disclosure of the information sought would "let citizens know 'what their government is up to.'" See *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)).

Prompt release of these records would contribute significantly to the public understanding of the public's understanding of Secretary Clinton's role as a senior government official, especially as voters examine her record in detail as the 2016 presidential election approaches.

Please release any information pursuant to my requests as it is received and/or reviewed by your office, rather than waiting to send me all the material I have requested. If you have questions or need to contact me, I can be reached at 202-641-9405. My email address is sbraun@ap.org

As I am making this request on behalf of the AP for use in reporting the news, no fees may be assessed for searching or reviewing documents sought by this request, and no duplication fees should be charged to the AP for the first 100 pages of material (see *5 U.S.C. § 552(a)(4)(A)(ii)(II)*). AP hereby consents to pay duplication charges up to a total not to exceed $50. Please notify me in advance before incurring any duplication charges in excess of this amount.

As you know, the Act permits you to reduce or waive the fees when the release of the information is considered as "primarily benefiting the public." I believe that this request fits that category and I therefore ask that you waive any fees.

If all or any part of this request is denied, please cite the specific exemption(s) that you think justifies your refusal to release the information and inform me of your agency's administrative appeal procedures available to me under the law.

To the extent that you affirm, in whole or in part, the denial of disclosure, we ask that you provide us with a list describing with specificity the categories of documents that have been withheld and explaining the grounds for the withholding *(see Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973))*.

I would appreciate your handling this request as quickly as possible, and I look forward to hearing from you.

Sincerely,

Stephen Braun
Associated Press Washington Bureau
1100 13th Street, NW
Suite 700
Washington DC
20005-4076
Ofc: 202-641-9405
Cell: 202-365-2667
Fax: 202-496-8850
sbraun@ap.org



**ASSOCIATED PRESS**

Washington Bureau
1100 13th Street NW, Suite 700
Washington, DC 20005

www.ap.org

Sheryl L. Walter
Director, Office of Info. Programs and Services
U.S. Department of State
Building SA-2
515 22nd Street NW
Washington, DC 20522-8100
FAX: (202) 261-8579

*Via FAX*

RE:    Freedom of Information Act request
       Expedited processing requested

Aug. 20, 2013

Dear Ms. Walter:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I request access to and copies of former Secretary of State Hillary Clinton's email messages in which the underlined phrases are in the subject and/or body of the message: Bin Laden, Abbottabad, Seal Team. This request covers emails only sent or received from Jan. 20, 2009 through Feb. 1, 2013.

Because I am a member of the news media who is primarily engaged in disseminating information, I have an "urgency to inform" the public about an activity of the federal government in accordance with § 552 (a)(6)(E)(v). Such a request for expedited processing meets established criteria for demonstrating a "compelling need": the records concern a matter of current exigency to the American public; that their delay would compromise a significant recognized interest; and that they concern federal government activity. See generally *Al-Fayed v. C.I.A.*, 254 F.3d.300, 310 (D.C. Cir. 2001).

These records pertain to correspondence among a former secretary of state who will likely run for the presidency of the United States[1]. Records involving Secretary Clinton are a matter of extreme public importance such that disclosure of would not apply to any exemption sufficient to warrant withholding or unnecessary delay under the FOIA. Indeed, the only relevant public interest at stake is the extent to which disclosure of the information sought would "let citizens know 'what their government is up to.'" See *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)).

Public interest in the prompt disclosure of the records is high, as it would shed light on the operations of government, particularly whether or not Secretary Clinton engaged in misconduct or unethical behavior during her tenure as the nation's top diplomat. Prompt release of these records would also contribute significantly to the public's understanding of her role as a senior government official, especially as voters

---

[1] Steve Peoples, CLINTON GROUP RAISED $1 MILLION FOR POTENTIAL PRESIDENTIAL BID, The Associated Press, July 30, 2013.

1

examine her record in detail as she prepares to become the next U.S. President — a significant, recognized interest.

Because this is a request by the news media for records in the public interest, I ask that you waive any search fees in accordance with § 552(a)(4)(A)(ii)(II). If the fee for retrieving or reproducing these records will exceed $50, please notify me before filling this request. I can be reached at **(202) 641-9448** or by electronic mail at **jgillum@ap.org**.

As you know, agencies must redact only what is necessary to protect exempt information and must explain the basis for any redactions. See *Georgacarakos v. F.B.I.*, No. 11-1655 (JDB), 2012 WL 6210119 (D. D.C. Dec. 12, 2012). As well, please provide documents to me on a rolling basis, rather than waiting for my entire request to be processed before releasing documents.

As a reminder, the President has directed that the FOIA "be administered with a clear presumption: In the face of doubt, openness prevails." Memorandum for the Heads of Executive Dep'ts and Agencies, 74 Fed. Reg. 15, 4683 (Jan. 26, 2009), emphasis added. This instruction is unambiguous: "All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in the FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving the FOIA." *Id.*

The Act, in § 552(a)(6), grants your office no more than twenty working days in which to respond to this request. See also *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) ("Congress adopted the time limit provision in the FOIA in order to 'contribute to the fuller and faster release of information, which is the basic objective of the Act.'" (quoting H.R. Rep. No. 93-876, March 5, 1974, reprinted (1974) U.S. Code Cong. & Ad. News 6267 at 6271)). Agencies therefore "should make it a priority to respond in a timely manner. Timely disclosure of information is an essential component of transparency." Attorney General's Memorandum for Heads of Executive Dep'ts and Agencies Concerning the Freedom of Info. Act, at 3 (Mar. 19, 2009), available from http://www.justice.gov/ag/foia-memo-march2009.pdf.

I affirm the information provided above, including information applicable to my request for expedited processing, is true and correct to the best of my knowledge and belief.

Thank you for your assistance. I look forward to your prompt reply.

With regards,

Jack Gillum
The Associated Press

2

# EXHIBIT 2



September 3, 2013

Department of State
Chief Requester Liaison Division
Office of Information Programs and Services
Building SA-2
515 22nd Street, NW
Washington, DC 20522-8100
Email: FOIAstatus@state.gov

Re: Appeal of Expedited Processing Denial for AP Freedom of Information Act request #F-2013-14267

Dear Sir or Madam:

This letter serves as an appeal to a Department of State denial of expedited processing for Freedom of Information Act request #F-2013-14267, in which the Associated Press on August 20, 2013 requested copies of all emails, in-house memos, correspondence, internal notes and any other pertinent documents and records from the office of former Seretary of State Hillary Rodham Clinton (and from six named aides) relating to the designation of Special Government Employee given to former Deputy Chief of Staff Huma Abedin.

This request, which covers the period November 1, 2011 to February 1, 2013, also asked for copies of all emails from Secretary Clinton and the named aides in which the following words or phrases are in the subject and/or body of the email: Huma Abedin, Huma, Anthony Weiner, Teneo, Douglas Band, Doug Band, Declan Kelly, Paul Keary, Clinton Foundation.

In its denial on Aug. 23, 2013 (received by the AP on Aug. 30, 2013), State's Office of Information Programs and Services cited U.S. 22 C.F.R. 171.12(b), which states that FOIA requests should be given "expedited treatment whenever a requested has demonstrated that a 'compelling need' for the information exists." State responded that the AP FOIA request did not meet any of the four criteria needed to prove compelling need: (1) Imminent threat to the life or physical safety of an individual; (2) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (3) substantial humanitarian reasons; and (4) loss of substantial due process rights.

The most recent U.S. government annual printing of 22 C.F.R. 171.12(b), dated April 1, 2013 (http://www.gpo.gov/fdsys/pkg/CFR-2013-title22-vol1/pdf/CFR-2013-title22-vol1-sec171-12.pdf), states that a "'compelling need' is deemed to exist where the requester can demonstrate one of the following: (1) Failure to obtain requested information on an expedited basis could reasonably be expected to: pose an imminent threat to the life or physical safety of an individual; impair substantial due process rights; or harm substantial humanitarian interests; (2) The information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. News media requesters would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just a particular segment or group."

The current language in (2) of the "compelling need" definition clearly designates "news media requesters" as normally qualifying. Additionally the language also says requesters must demonstrate information would

be disseminated to the public, not just "a particular segment or group. The Associated Press would qualify in both respects. The AP is the world's largest news-gathering organization, with more than 1 billion readers, listeners and viewers.

The latest language cited by 22 C.F.R. 171.12(b) also requires that the information be urgently needed, stating that "the information has a particular value that will be lost if not disseminated quickly." The C.F.R. section also states the information sought must concern "some actions, taken contemplated, or alleged by or about the government of the United States, or one of its components or agencies, including the Congress."

The AP FOIA request of August 20, 2013 cited its "urgency to inform" the public about an activity of the federal government in accordance with §552 (a)(6)(E)(v). Such a request for expedited processing meets established criteria for demonstrating a "compelling need": the records concern a matter of current exigency to the American public; that their delay would compromise a significant recognized interest; and that they concern federal government activity. See generally Al-Fayed v. C.I.A., 254 F.3d.300, 310 (D.C. Cir. 2001).

The records sought by the AP pertain to Ms. Abedin, a key former aide to Secretary Clinton whose SGE role at State has come under question in recent weeks and is the subject of a current Congressional inquiry by Sen. Chuck Grassley, R-Ill., the ranking minority member of the Senate Judiciary Committee. Grassley sent a series of questions about Abedin's appointment and State's handling of SGE designations to Secretary of State John Kerry on June 13. State's July 17 response "left many questions unanswered," he wrote back in an Aug. 15 reply that asked State new questions about the issues.

The records pertaining to the hiring of a long-time aide of a former secretary of state who has run in the past for the presidency of the United States and is considering another presidential campaign is a matter of current exigency to the American public and their delay would compromise a significant recognized interest. The records are a matter of extreme public importance such that disclosure of would not apply to any exemption sufficient to warrant withholding or unnecessary delay under the FOIA. Indeed, the only relevant public interest at stake is the extent to which disclosure of the information sought would "let citizens know 'what their government is up to.'" See U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 497 (1994) (quoting DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989)).

Prompt release of these records would contribute significantly to the public understanding of the public's understanding of Secretary Clinton's role as a senior government official, especially as voters examine her record in detail as the 2016 presidential election approaches. Additionally, these records would also add to the public's understanding of State's designation of SGE status and whether Ms. Abedin's SGE designation was appropriate.

Without expedited processing, the public would go without critical, up-to-date information about the performance and decision-making of key government officials during a period when there is an urgent and ongoing exchange about federal government activity. It is critical to know this information now, while the Senate inquiry is still unfolding, and not months or years later, when the matter is no longer pressing public and government concern.

Therefore, no reasonable grounds exist to deny expedited processing for this request.

I look forward to your prompt reply.

Regards,

☑004/006

Stephen Braun
Associated Press Washington Bureau
1100 13th Street, NW
Suite 700
Washington DC
20005-4076
Ofc: 202-641-9405
Cell: 202-365-2667
Fax: 202-496-8850
sbraun@ap.org

PATRICK J. LEAHY, VERMONT, CHAIRMAN

DIANNE FEINSTEIN, CALIFORNIA          CHARLES E. GRASSLEY, IOWA
CHARLES E. SCHUMER, NEW YORK          ORRIN G. HATCH, UTAH
RICHARD J. DURBIN, ILLINOIS           JEFF SESSIONS, ALABAMA
SHELDON WHITEHOUSE, RHODE ISLAND      LINDSEY O. GRAHAM, SOUTH CAROLINA
AMY KLOBUCHAR, MINNESOTA              JOHN CORNYN, TEXAS
AL FRANKEN, MINNESOTA                 MICHAEL S. LEE, UTAH
CHRISTOPHER A. COONS, DELAWARE        TED CRUZ, TEXAS
RICHARD BLUMENTHAL, CONNECTICUT       JEFF FLAKE, ARIZONA
MAZIE HIRONO, HAWAII

BRUCE A. COHEN, Staff Director
KRISTINE J. LUCIUS, Chief Counsel and Deputy Staff Director
KOLAN L. DAVIS, Republican Chief Counsel and Staff Director
BETH LARD KOTHMAN, Republican Deputy Staff Director

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

August 15, 2013

The Honorable John F. Kerry
Secretary of State
U.S. Department of State
2201 C Street, NW
Washington, DC 20520

Dear Secretary Kerry:

I am writing in regards to the Department of State's use of the "Special Government Employee" (SGE) designation and whether it complies with statute and previous practice. The SGE designation is particularly important because an SGE is not subject to the same conflict of interest rules as all other government employees. Failing to properly apply SGE guidelines undercuts conflict of interest statutes and the intent of Congress.

After Congress passed the statute which created the SGE designation in 1962, then-Attorney General Robert F. Kennedy issued a memorandum published in the Federal Register to help analyze the new law. In that memorandum, Attorney General Kennedy said that one of the main purposes of the new law was "to help the government obtain the temporary or intermittent services of persons with special knowledge and skills whose principal employment is outside the government."[1]

Currently, the Office of Government Ethics (OGE) provides the following guidance regarding the SGE designation:

Congress created the SGE category in 1962 when it revised the criminal conflict of interest statutes. Congress recognized the need to apply appropriate conflict of interest restrictions to experts, consultants, and other advisers who serve the Government on a temporary basis. On the other hand, *Congress also determined*

---

[1] Department of Justice, Office of the Attorney General, Memorandum Regarding Conflict of Interest Provisions of Public Law 87-849, 28 Federal Register 985 (January 28, 1963).

3. In a memo titled, "Counting Days of Service for Special Government Employees," the Director of the Office of Government Ethics says, "the statutory definition of SGE, 18 U.S.C. § 202(a), requires agencies to make an advance determination of whether an employee is expected to serve no more than 130 days during the ensuing 365-day period."[3] Please provide the advance determinations for all State Department SGEs from 2000 to the present including Ms. Abedin.

4. Please provide all records relating to communications regarding Ms. Abedin's SGE status.

5. Please provide all records relating to communications between the State Department and Teneo and the State Department and any clients or entities represented by Teneo.

Thank you in advance for your prompt attention to this matter. Please respond to these questions by August 29, 2013, and number your answers in accordance with my questions. If you have any questions regarding this letter, please contact Chris Lucas of my staff at (202) 224-5225.

Sincerely,

Chuck Grassley

Charles E. Grassley
Ranking Member
Committee on the Judiciary

---

[3] Robert I. Cusick, Director, Office of Government Ethics, Memorandum to Agency Ethics Officials. "Counting Days of Service for Special Government Employees" (January 19, 2007).

**Tyler, Eva O**

| | |
|---|---|
| **From:** | FOIA Status |
| **Sent:** | Thursday, September 26, 2013 11:04 AM |
| **To:** | Gillum, Jack |
| **Subject:** | RE: Appeal of expedited processing denial for FOIA request No. F-2013-14260 |

Mr. Gillum,

The appropriate office has been forwarded your appeal for the denial of expedited processing.

I hope this information is helpful.  If you have further concerns or have any questions regarding any FOIA-related matter, please contact the FOIA Requester Service Center (FRSC) at (202) 261-8484, or fax us at (202) 261-8582 or send an e-mail to foiastatus@state.gov

Chris Barnes
U.S. Department of State
FOIA Requester Service Center
(202) 261-8484
foiastatus@state.gov


In accordance with Executive Order 12958, this message is UNCLASSIFIED


This email is UNCLASSIFIED.


---

**From:** Gillum, Jack [mailto:JGillum@ap.org]
**Sent:** Wednesday, September 25, 2013 2:57 PM
**To:** FOIA Status
**Subject:** Appeal of expedited processing denial for FOIA request No. F-2013-14260

Department of State
Chief Requester Liaison Division
Office of Information Programs and Services
Building SA-2
515 22nd Street NW
Washington, DC 20522-8100
Email: FOIAstatus@state.gov

*Via electronic mail*

Sept. 24, 2013

Appeal of expedited processing denial for FOIA request No. F-2013-14260

Dear Sir or Madam:

1

This letter serves as an appeal to a Department of State denial of expedited processing for Freedom of Information Act request No. F-2013-14260, in which The Associated Press on Aug. 20, 2013, requested copies of former Secretary of State Hillary Clinton's email messages in which the underlined phrases were in the subject and/or body of the message: <u>Bin Laden</u>, <u>Abbottabad</u>, <u>Seal Team</u>. This request covered emails only sent or received from Jan. 20, 2009 through Feb. 1, 2013.

In its denial on Aug. 26, 2013, the State Department's Office of Information Programs and Services cited 22 C.F.R. § 171.12(b), which states that FOIA requests should be given "expedited treatment whenever a requested has demonstrated that a 'compelling need' for the information exists." State responded that the AP FOIA request did not meet any of the four criteria needed to prove compelling need: (1) Imminent threat to the life or physical safety of an individual; (2) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (3) substantial humanitarian reasons; and (4) loss of substantial due process rights.

As you know, a "'compelling need' is deemed to exist where the requester can demonstrate one of the following: (1) Failure to obtain requested information on an expedited basis could reasonably be expected to: pose an imminent threat to the life or physical safety of an individual; impair substantial due process rights; or harm substantial humanitarian interests; (2) <u>The information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. News media requesters would normally qualify</u>; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just a particular segment or group." *Id.,* emphasis added.

The current language in part (2) of the "compelling need" definition clearly designates "news media requesters" as normally qualifying. Additionally the language also says requesters must demonstrate information would be disseminated to the public, not just "a particular segment or group." The Associated Press would qualify in both respects. The AP is the world's largest news-gathering organization, with more than 1 billion readers, listeners and viewers.

The latest language cited by 22 C.F.R. § 171.12(b) also requires that the information be urgently needed, stating that "the information has a particular value that will be lost if not disseminated quickly." Regulations also state the information sought must concern "some actions, taken contemplated, or alleged by or about the government of the United States, or one of its components or agencies, including the Congress." *Id.*

This request cited its "urgency to inform" the public about an activity of the federal government in accordance with 5 U.S.C. §552 (a)(6)(E)(v). Such a request for expedited processing met established criteria for demonstrating a "compelling need": the records concern a matter of current exigency to the American public; that their delay would compromise a significant recognized interest; and that they concern federal government activity. See generally *Al-Fayed v. C.I.A.*, 254 F.3d.300, 310 (D.C. Cir. 2001).

The records pertaining to a former secretary of state — who has run in the past for the presidency of the United States and is considering another presidential campaign — are a matter of current exigency to the American public, and their delay would compromise a significant recognized interest. The records are a matter of extreme public importance such that disclosure of would not apply to any exemption sufficient to warrant withholding or unnecessary delay under the FOIA. Indeed, the only relevant public interest at stake is the extent to which disclosure of the information sought would "let citizens know 'what their government is up to.'" See *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989)).

Prompt release of these records would contribute significantly to the public understanding of the public's understanding of Secretary Clinton's role as a senior government official in handling a known terrorist's capture, especially as voters examine her record in detail as the 2016 presidential election approaches.

Without expedited processing, the public would go without critical, up-to-date information about the performance and decision-making of key government officials during a period when there is an urgent and ongoing exchange about federal government activity. It is critical to know this information now — and not months or years later — when the matter is no longer pressing public and government concern. By then, the election will be over.

Therefore, no reasonable grounds exist to deny expedited processing for this request.

I look forward to your prompt reply.

Regards,

Jack Gillum
The Associated Press
1100 13th Street NW, Suite 700
Washington, DC 20005
(202) 641-9448
jgillum@ap.org


The information contained in this communication is intended for the use
of the designated recipients named above. If the reader of this
communication is not the intended recipient, you are hereby notified
that you have received this communication in error, and that any review,
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
notify The Associated Press immediately by telephone at +1-212-621-1898
and delete this email. Thank you.
[IP_US_DISC]


msk dccc60c6d2c3a6438f0cf467d9a4938

# EXHIBIT 3



United States Department of State

*Washington, D.C. 20520*

NOV 1 3 2013

Case Number: F-2013-14267

Stephen Braun
Associated Press Washington Bureau
1100 13th Street, NW – Suite 700
Washington, DC  20005

Dear Mr. Braun:

This is in response to your Freedom of Information Act (FOIA) request,
dated August 20, 2013, concerning Huma Abedin. Specifically this letter
addresses your appeal of our denial of expeditious processing which was
dated September 3, 2013.

We have considered your appeal of the denial of expeditious processing.
Our published regulations regarding expedition, 22 C.F.R. 171.12(b), require
a specific showing of a compelling need. **Expeditious processing is
granted only in the following situations:**

    (1) Imminent threat to the life or physical safety of an individual;
    (2) Urgently needed by an individual primarily engaged in
disseminating information in order to inform the public concerning
actual or alleged Federal Government activity and the information is
urgently needed in that a particular value of the information would be
lost if not disseminated quickly;
    (3) Substantial humanitarian reasons; and
    (4) Loss of substantial due process rights.

Your request and appeal do not meet any of the established criteria.

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

Regrettably, I must advise that you have not provided adequate justification for expedition and I must uphold the decision to deny expeditious processing. Please be assured that the Department takes its FOIA responsibilities very seriously and we are processing this request in as timely a manner as possible. All appropriate offices have been advised of your interest in this matter.

For further communications, please note our contact information at the bottom of this page. You may also refer to our website for general information and guidelines. We can provide faster service if you include your request case number **F-2013-14267** in your communications with us.

Sincerely,

Sheryl L. Walter, Director
Office of Information Programs
    and Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*



United States Department of State

*Washington, D.C. 20520*

MAR **2 0** 2014

Case Number: **F-2013-14260**

Jack Gillum
The Associated Press
1100 13th Street, NW
Suite 700
Washington, DC 20005

Dear Mr. Gillum:

This is in response to your Freedom of Information Act (FOIA) request, dated **8/20/2013**, concerning **emails with key words Bin Laden, Abbottabad, and Seal Team**. Specifically this letter addresses your appeal of our denial of expeditious processing which was dated **9/25/2013**.

We have considered your appeal of the denial of expeditious processing. Our published regulations regarding expedition, 22 C.F.R. 171.12(b), require a specific showing of a compelling need. **Expeditious processing is granted only in the following situations:**

> (1) Imminent threat to the life or physical safety of an individual;
> (2) Urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly;
> (3) Substantial humanitarian reasons; and
> (4) Loss of substantial due process rights.

Your request and appeal do not meet the established criteria.

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

Regrettably, I must advise that you have not provided adequate justification for expedition and I must uphold the decision to deny expeditious processing. Please be assured that the Department takes its FOIA responsibilities very seriously and we are processing this request in as timely a manner as possible. All appropriate offices have been advised of your interest in this matter.

For further communications, please note our contact information at the bottom of this page. You may also refer to our website for general information and guidelines. We can provide faster service if you include your request case number **F-2013-14260** in your communications with us.

Sincerely,

Sheryl L. Walter, Director
Office of Information Programs
and Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website:* *www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

# EXHIBIT 4

| Case | Production Schedules |
|------|----------------------|
| *Argus Legal v. Dept of State* (DDC No. 15-cv-00540) | Productions due August 17, September 17, and October 16 (final production). |
| *Accuracy In Media, et al. v. DOD, et al.* (DDC 1:14-cv-01589) | Productions due August 31 and October 26 (final production). |
| *Cause of Action v. IRS et al.* (DDC No. 14-cv-01407) | Productions due August 28, September 30 (final production). |
| *Judicial Watch v. DOS et al.* (DDC No. 14-cv-00812) | Final production due September 25. |
| *Judicial Watch v. DOS* (DDC 14-cv-01733) | Final production due August 31. |
| *Leopold v. DOS* (DDC 15-cv-00123) | Productions due every 30 days with final production due January 29, 2016. |
| *Veterans for a Strong America v. Dep't of State* (DDC No. 15-cv-00464) | Productions due August 7, September 18, October 30, and December 11, with further production dates to be determined by the court. |
| *ICB (2) v. DOS et al.* (DDC No. 13-cv-1591) | Production schedule to be determined with more than 11,500 pages to be reviewed. |
| *Canning v. DOS* (DDC No. 13-cv-0831) | Productions every four weeks. |
| *CCR v. DoD et al.* (SDNY No. 11-cv-3533) | Productions approximately every four weeks with all productions to be complete by December 31. |
| *Davidson v. DOS et al.* (DDC No. 14-cv-01358) | Production due August 27. |
| *DeSousa v. CIA* (D.D.C. No. 14-cv-01951) | Productions due every six weeks with productions to be complete by December 23. |
| *Energy & Environmental Legal Institute v. Dept of State* (EDVA No. 15-cv-00423) | Productions due every two weeks, with over 20,000 pages to be reviewed. |
| *Leopold v. DOS (Air Wing)* (DDC No. 14-cv-01770) | Production schedule to be determined. |
| *Patino-Restrepo v. DOS et. al* (DDC No. 14-cv-01866) | Production due on September 30 with additional productions to be determined thereafter. |
| *Citizens United v. Dep't of State* (photos) (DDC No. 1:15-cv-00428) | Productions due every four weeks to be completed on or before December 31. |
| *Stoter v. USAID et al* (DDC 14-cv- 02156) | Production to be completed by December 31. |

Exibit 4

| Case | Production Schedule |
|---|---|
| ACLU v. Dep't of Justice, et al. (SDNY No. 1:15-cv-01954) | Production to be completed by September 30; DOS anticipates thousands of potentially responsive records will have to be reviewed in response to this request. |
| Citizens United v. Dept of State (OIG) (DDC No. 1:15-cv-00441) | Productions due on September 4 and October 30. |
| Judicial Watch v. Department of State (DDC No. 12-cv-02034) | Production schedule to be determined after January 29, 2016. |
| Judicial Watch v. Department of State (DDC No. 15-cv-646) | First production due August 20 with rolling productions every 6 weeks thereafter. |
| Judicial Watch v. Department of State (DDC No. 15-cv-684) | Rolling productions every 60 days starting August 31. |
| Judicial Watch v. Department of State (DDC No. 15-cv-687) | Productions start on September 3 with rolling productions every five weeks thereafter.  Productions to be completed on or before December 17. |
| Judicial Watch v. Department of State (DDC No. 15-cv-688) | First production due by September 17 but subject to change depending on the volume of potentially responsive documents. |
| Judicial Watch v. Department of State (DDC No. 15-cv-689) | First production due September 4 with dates of later productions to be determined by the court. |
| Judicial Watch v. Department of State (DDC No. 15-cv-690) | All responsive documents to be produced on or before August 14. |
| Leopold v. DOS (DDC 14-cv-01771) | Productions due on the last day of each month.  The Department must process an average of 700 pages per month. |
| Leopold v. DOS (DDC 14-cv-01760) | Productions due every 4 weeks.  The Department must process a minimum of 700 pages per month. |
| O'Brien v. DOS (DDC No. 14-cv-00119) | Department is running additional searches, so no production schedule is currently in place as volume is uncertain. |
| Jay v. DOS (S.D. Fla. No. 14-cv-60222) | Productions due every 30 days with approximately 56,000 pages remaining to be reviewed. |
| Citizens United v. Dept of State (DDC No. 15-cv-00518) | Productions due every month beginning September 1. |
| Bauer v. CIA, DOJ, & DOS (DDC No. 14-cv-00963) (hikers) | DOS makes rolling productions every 6 weeks. |

Exibit 4

| | |
|---|---|
| *Friends of the Earth v. DOS* (DDC No. 13-cv-1086) | DOS processes an average of 700 pages for production every 4 weeks. |
| *Joseph v. Department of State* No. 1:14-cv-01896 (D.D.C.) | DOS produces documents every six weeks. |
| *Citizens United v. Department of State* (DDC No. 15-cv-374) | Productions due August 10, September 8 (final production). |
| *Judicial Watch v. Department of State* (DDC No. 15-cv-692) | First production due September 30 with remainder of production schedule to be ordered by the court. |
| *White Earth Nation et al. v. Kerry & DOS* (D. Minn. No. 14-cv-04726) | DOS makes rolling productions. |
| *Wadelton & Truthout v. DOS* (DDC No. 13-cv-0412) | Production of approximately 400 documents due on August 31. |

Exibit 4